# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**L.P.R. CONSTRUCTION CO. LLC,**

        **Plaintiff,**

**v.**                                **Case No:  6:18-cv-1188-Orl-41DCI**

**STEEL FABRICATORS, L.L.C.,**
**FEDERAL INSURANCE COMPANY,**
**KIEWIT INFRASTRUCTURE SOUTH**
**CO. and WALTER P. MOORE AND**
**ASSOCIATES, INC.,**

        **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT, STEEL FABRICATOR, LLC'S AMENDED MOTION TO DISMISS CROSSCLAIM OF KIEWIT INFRASTRUCTURE SOUTH CO. (Doc. 21)** |
| **FILED:** | **July 31, 2018** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED.** | |

## I.    Procedural and Factual Background

On April 13, 2018, Plaintiff (L.P.R. Construction Co., LLC (LPR)) filed an action in state court against Defendants Steel Fabricators, LLC (Steel Fab), Federal Insurance Company, Kiewit Infrastructure South Co. (Kiewit), and Walter P. Moore and Associates, Inc.  *See L.P.R. Constr. Co. LLC v. Steel Fabricators, L.L.C. et al.,* Case No.: 2018-CA-003854-O (Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida); Docs. 1; 1-2 at 8.  The Complaint in

that case was served on Kiewit on May 8, 2018.  Doc. 1 at 2.  On July 24, 2018, having learned that the parties were completely diverse during discovery, Kiewit filed its notice of removal and removed the state court action to this Court.  *See id*.  The Complaint from that action is the operative pleading in this case.  Doc. 2.

According to LPR's allegations in the Complaint, this action arises from structural steel erection work performed by LPR for the Orlando International Airport South Airport Intermodal Terminal Facility (**the Project**).  Doc. 2 at 2.  In November 2014, the owner of the Project, the Greater Orlando Aviation Authority (GOAA), which is a public agency, entered in a general contract for the Project with an entity called Turner-Kiewit Joint Venture (TKJV).  *Id*. at 3.  The following then took place:

- TKJV entered into a subcontract agreement with Steel Fab for steel structural work (hereafter **the Steel Fab Subcontract**).  *Id*.

- LPR entered into a purchase order agreement with Steel Fab through which LPR agreed to provide equipment and labor identified in the Steel Fab Subcontract (hereafter **the Purchase Order**).  *Id*.

- TKJV entered into a separate agreement with Kiewit, in which Kiewit agreed to perform certain reinforced concrete work for the Project (hereinafter **the Kiewit Subcontract**).  *Id*.

In the Complaint, LPR alleges that actions and errors caused by Defendants resulted in delays and made it impossible for LPR to perform the steel erection work as required by the Purchase Order.  *Id*. at 5.  Due to the actions of Defendants, LPR asserts that its actual costs to complete its work under the Purchase Order almost doubled, and LPR is bringing this action to

recoup those additional costs.  *Id*. at 6-7.  Specifically, in the Complaint, LPR made the following claims against Steel Fab and Kiewit:

- Count I – breach of contract against Steel Fab as to the Purchase Order;

- Count II – breach of payment bond against Steel Fab;

- Count IV – negligence against Kiewit; and

- Count V – breach of contract against Kiewit, asserting that LPR is an intended third-party beneficiary to the Kiewit Subcontract.

*See* Doc. 2 (the foregoing identifies only those claims against Steel Fab and Kiewit).

When Kiewit responded to the Complaint, it also asserted a single crossclaim against Steel Fab, asserting that Steel Fab had breached its contractual duty to fully defend, indemnify, and hold harmless Kiewit as to LPR's claims against Kiewit in the Complaint.  *See* Doc. 8 at 9-14.  The facts as alleged in the crossclaim are as follows:  In 2014, TKJV and GOAA entered into a general contract for the Project.  *Id*. at 10.  As part of its contract with GOAA, TKJV entered into a subcontract with Steel Fab for structural steel work on the Project (i.e. **the Steel Fab Subcontract**). Id. at 11.  Steel Fab then entered into a subcontract with LPR for the equipment and labor needed to erect structural steel on the Project (i.e. **the Purchase Order**).  *Id*.  TKJV also entered into a subcontract with Kiewit – one of the joint venture's (i.e. TKJV's) partners – for concrete work on the project (i.e. **the Kiewit Subcontract**).  *Id*.  According to the crossclaim, during construction of the Project, there were issues with Steel Fab's structural steel work that threatened to delay the Project.  *Id*.  Thus, TJKV was forced to accelerate its work on the Project, and those acceleration efforts caused TJKV to incur significant additional costs on the Project; TJKV informed Steel Fab that those additional costs would be "back charged" to Steel Fab.  *Id*.  After extensive negotiations, on April 3, 2018, "TJKV and Steel Fab signed a written agreement in which Steel Fab agreed to

pay Kiewit $1,000,000.00 as the final settlement" for all costs and claims under the Steel Fab

Subcontract, including the acceleration back charge (hereafter **the April Agreement**).  *Id*.  The

April Agreement, between Steel Fab and TJKV, contained the following language:

> This letter is to serve as final reconciliation and final settlement of any and all outstanding costs, claims, and back-charges under the Subcontract associated with the Turner-Kiewit Joint Venture acceleration back-charge to Steel Fabricators, LLC. The final agreed upon value for this settlement is One Million Dollars ($1,000,000). In addition, Steel Fabricators agrees to indemnify Turner-Kiewit and it's client, The Greater Orlando Aviation Authority (GOAA), from any claim, potential claim, demand or cause of action from Steel Fabricator's erector, LPR.

*Id*. at 12; 17 (the April Agreement, which is attached to the crossclaim).

On April 13, 2018, LPR filed this action against Defendants in state court.  *Id*. at 19.  This

lawsuit by LPR then became "a central focus of the parties' negotiations to close out Steel Fab's

work on the Project."  *Id*. at 12.  Thus, on May 7, 2018, TJKV and Steel Fab executed a final

change order for Steel Fab's work on the Project (hereafter **the Change Order**).  *Id*.  The Change

Order "serve[d] as final reconciliation and final settlement of any and all outstanding costs, claims,

and back- charges [*sic*] (to and from) under this Subcontract associated with [TKJV's] acceleration

claim."  *Id*. 12 (alterations in original, and quoting the Change Order, attached *id*. at 19-24).

According to the crossclaim, "the Change Order also provides that TKJV and Steel Fab were

"referenc[ing] the [April Agreement] dated March 2, 2018 and fully executed by both Steel

Fabricators and TKJV on April 3, 2018."  *Id*. at 12.  Specifically, the Change Order contained the

following language:

> Reference the attached letter dated March 2, 2018 and fully executed by both Steel Fabricators and TKJV on April 3, 2018.  By execution of this change order, and as a material part of the resolution herein, Steel Fabricators agrees to fully defend, indemnify, and hold harmless TKJV and their client GOAA, as well as Turner Construction Company and Kiewit Infrastructure South Co. ("KISC"), from any lawsuit, claim, or potential claim related to our Subcontract Agreement (SOS) on the GOAA S. Airport Terminal dated February 24, 2016 by L.P.R. Construction Co. LLC ("L.P.R."), as per Article XXIII of the SOS Steel Fabricators' erector,

> including the lawsuit filed by L.P.R. on April 13, 2018, in the Circuit Court of the Ninth Judicial Circuit in Orange County, Florida, against KISC and Steel Fabricators, among others.

*Id*. at 21.  When LPR served Kiewit with the Complaint in May 2018, Kiewit wrote to Steel Fab and requested that Steel Fab indemnify it, but Steel Fab refused.  *Id*. at 13.  Thus, Kiewit asserts in the crossclaim that "[u]nder the April Agreement and Change Order, Steel Fab agreed to fully defend, indemnify, and hold harmless Kiewit from any lawsuit, including the LPR Lawsuit" but Steel Fab refused to so indemnify it when requested.  *Id*. at 13.[1]

Removed along with the Complaint were several pending state court pleadings, including Steel Fab's motion to dismiss Kiewit's crossclaim.  *See* Docs. 8; 10.  Finding that motion woefully deficient and not in compliance with this Court's Local Rules (the undersigned identified Local Rule 3.01(a) specifically), the undersigned entered an endorsed order denying the motion.  *See* Doc. 15.  The next day, Steel Fab filed essentially the same motion to dismiss Kiewit's crossclaim, this time with the correct case caption for this case.  Doc. 16.  Thus, the undersigned entered a lengthier, written order, explaining the requirements of Local Rule 3.01(a), identifying the inadequacies of Steel Fab's motion, and providing Steel Fab with an unrequested extension of time to re-file the motion in compliance with the Court's Local Rules.  Doc. 20.

On July 31, 2018, Steel Fab filed an amended motion to dismiss Kiewit's crossclaim.  Doc. 21 (the Motion).  In the Motion, argued as a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), Steel Fab makes two arguments for dismissal.  *See* Doc. 21.  First, Steel Fab asserts that the crossclaim should be dismissed for failure to state a claim because the indemnity provision is not applicable to the claims concerning which Kiewit seeks indemnity.  *Id*. at 6-7.  Steel Fab argues

---

[1] Hereafter, the indemnification provisions of the April Agreement and the Change Order, taken together, will be referred to at times as "the indemnification agreement."

that the plain language of the indemnity agreement (contained within the Change Order) applies to a different subcontract; specifically, the indemnity provision within the Change Order (and the April Agreement) applies to claims by LPR based upon the Steel Fab Subcontract (between TKJV and Steel Fab), and not the Kiewit Subcontract (between TJKV and Kiewit) under which LPR is suing Kiewit. *Id*. Second, Steel Fab requests that the Court dismiss the crossclaim for a failure to state a claim because the indemnity agreement at issue is void for a violation of Florida Statutes section 725.06(1). Doc. 21 at 7-8. Citing to a single case from another district, Steel Fab asserts that the indemnity provision is void because it does not contain a monetary limit and, as such, the crossclaim should be dismissed. *Id*.

In response, Kiewit asserts that it has adequately pled its crossclaim. Doc. 34. Responding to Steel Fabs factual allegations in the Motion, Kiewit appears to concede that the subcontract identified in the indemnity agreement is actually the Steel Fab Subcontract and is not the subcontract under which LPR now sues (i.e. the Kiewit Subcontract), but Kiewit asserts that the indemnity provision still allows relief because, as alleged in the crossclaim, the claims for which Kiewit seeks indemnification "relate to" the Steel Fab Subcontract. *Id*. at 5-8. Further, Kiewit argues that the indemnity agreement within the Change Order explicitly provides for Steel Fab to indemnify Kiewit *in this specific lawsuit* – so there can be no doubt about Steel Fab's obligations. *Id*. As to Steel Fab's statutory basis for dismissal, Kiewit argues first that subsection (1) of section 725.06 does not apply to the indemnification agreement because the agreement at issue is a contract involving a public agency and, as such, subsection (2) of section 725.06 applies, which, in turn, does not require a monetary limitation. *Id*. at 9. Regardless, Kiewit argues next that the indemnification agreement is, actually, a settlement agreement and not a construction contract and, thus, section 725.06 is inapplicable. *Id*. at 10-11.

II.     **Discussion**

In the considering a motion to dismiss, a court must view the challenged complaint in the light most favorable to the party asserting the claim.  *See, e.g.*, *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).  Federal Rule of Civil Procedure 8(a) provides that a pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The court is limited in its consideration to the pleadings and any exhibits attached to those pleadings.  Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

a.   *First Basis for Dismissal*

As its first basis for dismissal of the crossclaim, Steel Fab asserts that the crossclaim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because the indemnity provision is not applicable to the claims concerning which Kiewit seeks indemnity.  *Id*. at 6-7.  Steel Fab argues that the plain language of the indemnity agreement (contained within the Change Order) applies to a different subcontract.  Specifically, Steel Fab argues that the indemnity provision within the Change Order (and the April Agreement) applies to claims that LPR may bring against Steel Fab based upon the Steel Fab Subcontract (between TKJV and Steel Fab), and not the Kiewit Subcontract (between TJKV and Kiewit).  Thus, because LPR is suing Kiewit due to an alleged breach of the Kiewit Subcontract, the indemnification agreement is inapplicable to this case and Steel Fab has no obligation to indemnify Kiewit in this case.  Therefore, Steel Fab argues that the Court should dismiss the crossclaim for failure to state a claim.

In response, Kiewit asserts that it has adequately pled its crossclaim.  Doc. 34.  Responding to Steel Fab's factual allegations in the Motion, Kiewit appears to concede that the subcontract specifically identified in the indemnity agreement is the Steel Fab Subcontract and is not the subcontract under which LPR now sues (i.e. the Kiewit Subcontract), but Kiewit asserts that the indemnity agreement still requires indemnification here because, as alleged in the crossclaim, the claims for which Kiewit seeks indemnification "relate to" the Steel Fab Subcontract.  *Id*. at 5-8.  Further, Kiewit argues that the indemnity agreement within the Change Order explicitly provides for Steel Fab to indemnify Kiewit *in this specific lawsuit* – so there can be no doubt about Steel Fab's obligations.  *Id*.

In effect, what Steel Fab asks the Court to do via the Motion is interpret the April Agreement and the Change Order.  However, "[a] court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment." *Hess v. Coca-Cola Refreshments USA, Inc.*, No. 8:13-CV-3136-T-33EAJ, 2014 WL 6909439, at *3 (M.D. Fla. Dec. 9, 2014) (citing *McKissack v. Swire Pac. Holdings, Inc.,* No. 09–22086–Civ, 2011 WL 1233370, at *3 (S.D. Fla. Mar.31, 2011) and *Moran v. Crystal Beach Capital, LLC,* No. 8:10–cv–1037–T–30AEP, 2011 WL 17637, at *4 (M.D. Fla. Jan.4, 2011)).  Indeed, even looking to the agreements at issue – all of which are attached to the pleadings and none of which are objected-to as inauthentic – the undersigned finds that the plain language of those agreements does not contradict the allegations in the crossclaim such that the undersigned could find that the crossclaim fails to state a claim pursuant to Rule 12(b)(6).  To the contrary, as argued by Kiewit, if the Court were to interpret the term "related to" in the Change Order to encompass this litigation, then Kiewit may have appropriately made a claim for indemnification.  Although Steel Fab did not seek leave to file a reply to Kiewit's argument, Steel Fab explicitly argues in the Motion that

the term "related to" in the Change Order limits the indemnification agreement to claims based directly upon the Steel Fab Subcontract.  But the undersigned recommends that the Court decline to engage in that manner of contract interpretation at this stage of the proceedings.  At this stage of the proceedings, it suffices that Kiewit made detailed factual allegations in the crossclaim that support the assertions that Steel Fab had an obligation to indemnify Kiewit based upon the language in the April Agreement and the Change Order, that Kiewit requested indemnification, and that Steel Fab refused to honor its agreement to indemnify.  In addition, there is no doubt that the indemnification agreement explicitly names this lawsuit.  Thus, taking the allegations in the crossclaim as true, and considering the agreements attached to the pleadings, the undersigned finds that the crossclaim "is plausible on its face."  *Iqbal*, 556 U.S. at 678.  While Steel Fab may ultimately be correct that its has no obligation to indemnify Kiewit based on the terms of the April Agreement and the Change Order, the undersigned finds that Kiewit has sufficiently alleged its crossclaim based on those agreements.

   b. *Second Basis for Dismissal*

As a second basis for relief, Steel Fab requests that the Court dismiss the crossclaim for a failure to state a claim because the indemnity agreement contained within the April Agreement and the Change Order is void for a violation of Florida Statutes section 725.06(1).  Doc. 21 at 7-8.  Specifically, Steel Fab asserts that the indemnity agreement is void because it does not contain a monetary limit and, as such, the crossclaim should be dismissed.  *Id*.  The provision of Florida law at issue reads as follows:

> (1) Any portion of any agreement or contract for or in connection with, or any guarantee of or in connection with, any construction, alteration, repair, or demolition of a building, structure, appurtenance, or appliance, including moving and excavating associated therewith, between an owner of real property and an architect, engineer, general contractor, subcontractor, sub-subcontractor, or materialman or any combination thereof wherein any party referred to herein

promises to indemnify or hold harmless the other party to the agreement, contract, or guarantee for liability for damages to persons or property caused in whole or in part by any act, omission, or default of the indemnitee arising from the contract or its performance, shall be void and unenforceable unless the contract contains a monetary limitation on the extent of the indemnification that bears a reasonable commercial relationship to the contract and is part of the project specifications or bid documents, if any. Notwithstanding the foregoing, the monetary limitation on the extent of the indemnification provided to the owner of real property by any party in privity of contract with such owner shall not be less than $1 million per occurrence, unless otherwise agreed by the parties. Indemnification provisions in any such agreements, contracts, or guarantees may not require that the indemnitor indemnify the indemnitee for damages to persons or property caused in whole or in part by any act, omission, or default of a party other than:

(a) The indemnitor;

(b) Any of the indemnitor's contractors, subcontractors, sub-subcontractors, materialmen, or agents of any tier or their respective employees; or

(c) The indemnitee or its officers, directors, agents, or employees. However, such indemnification shall not include claims of, or damages resulting from, gross negligence, or willful, wanton or intentional misconduct of the indemnitee or its officers, directors, agents or employees, or for statutory violation or punitive damages except and to the extent the statutory violation or punitive damages are caused by or result from the acts or omissions of the indemnitor or any of the indemnitor's contractors, subcontractors, sub-subcontractors, materialmen, or agents of any tier or their respective employees.

(2) A construction contract for a public agency or in connection with a public agency's project may require a party to that contract to indemnify and hold harmless the other party to the contract, their officers and employees, from liabilities, damages, losses and costs, including, but not limited to, reasonable attorney's fees, to the extent caused by the negligence, recklessness, or intentional wrongful misconduct of the indemnifying party and persons employed or utilized by the indemnifying party in the performance of the construction contract.

(3) Except as specifically provided in subsection (2), a construction contract for a public agency or in connection with a public agency's project may not require one party to indemnify, defend, or hold harmless the other party, its employees, officers, directors, or agents from any liability, damage, loss, claim, action, or proceeding, and any such contract provision is void as against public policy of this state.

Fla. Stat. Ann. § 725.06.

In support of its argument for dismissal, Steel Fab cites to a single case, *CC-Aventura, Inc.*

*v. Weitz Co., LLC*, 2007 WL 117934, at *2 (S.D. Fla. Jan. 10, 2007), and provides almost no

argument in support of the relief it seeks.  In *CC-Aventura*, the Court granted a motion to dismiss based on section 725.06(1) as follows:

> Accordingly, the Court finds that because neither of the contractual indemnity provisions at issue places a monetary limit on the amount of the subcontractors' potential liability, the provisions are void as to the subcontractors under the post-July 1, 2001 version of § 725.06, Florida Statutes. Therefore, the subcontractors' Motions to Dismiss Counts I through XI are GRANTED and those Counts are DISMISSED with prejudice.

2007 WL 117934, at *4.  Thus, because the indemnification agreement at issue here (contained within the April Agreement and the Change Order) contains no monetary limit on indemnification, Steel Fab argues that this Court should similarly dismiss the crossclaim.

To be sure, it is undisputed that the indemnification agreement in this case lacks a monetary limitation on indemnification.  Instead, Kiewit makes two arguments against dismissal.  First, citing to Florida Supreme Court case law, Kiewit asserts that, as a statute in derogation of the common law freedom to contract, section 725.06(1) should be strictly construed.  *See* Doc. 34 at 10.  Kiewit contends that section 725.06 applies only to "front-end" construction contracts, and not to the indemnification agreement here, which Kiewit contends is simply a settlement agreement, not a construction agreement.  Second, Kiewit asserts that the Project is a "construction contract for a public agency" (i.e. GOAA) and, thus, even if the Court found that the indemnification agreement contained within the April Agreement and the Change Order did fall within the purview of section 725.06, it would fall within subsection (2), not subsection (1).  And because section 725.06(2) does not require a monetary limitation on indemnification, the Motion is due to be denied.

In the Motion, Steel Fab implicitly seeks to have the Court interpret the contract in a manner inconsistent with the allegations in the crossclaim Steel Fab seeks to have the Court dismiss.  But the undersigned recommends that the Court decline to do so.  *See* Hess, 2014 WL

6909439, at *3 ("A court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.") (citations omitted).  Indeed, Steel Fab never addressed in the Motion whether the indemnification agreement is the type of contract that falls within the purview of section 725.06(1), and never sought leave to file a reply to Kiewit's response to address that issue.[2]  Instead, in the Motion, Steel Fab simply concludes – with no argument or citation to authority – that the indemnification agreement is governed by that statute because it is "contained within a modification to a construction contract."  Doc. 21 at 8. But that conclusion ignores the fact that Kiewit repeatedly alleged that the agreements evidencing the indemnification agreement were a "final settlement" of all outstanding issues related to TJKV's acceleration efforts entered into at or near the conclusion of all of Steel Fab's construction work; a characterization that is consistent with the language contained within the April Agreement and the Change Order.  In *CC-Aventura*, the only case relied upon by Steel Fab, it was undisputed that the indemnification agreement at issue was contained within a contract governed by section 725.06(1).  *See* 2007 WL 117934, at *3.  Here, in contrast, the very applicability of section 725.06 is in dispute, and a determination of whether the indemnification agreement is governed by that statute necessarily requires the Court to interpret the April Agreement and the Change Order. Further, the undersigned's hesitancy in recommending that the Court consider this issue at this stage of the case is bolstered by the fact that the case law addressing section 725.06 seems to primarily involve decisions following trial and motions for summary judgment.  *See, e.g.*, *Hess*, 2014 WL 6909439, at *4 (M.D. Fla. Dec. 9, 2014) ("In order for this Court to determine whether

---

[2] The undersigned notes that the Court twice denied Steel Fab's motion to dismiss for a failure to contain a memorandum of law supporting the relief requested; in the second order the undersigned specifically identified areas of deficiency in the motion and gave Steel Fab an unrequested extension of time.  *See* Docs. 16; 20.

the indemnification provision is enforceable . . . the Court would need to engage in contract interpretation; specifically, whether Fla. Stat. § 725.06 applies to the indemnification clause at issue and the pleadings.  Such analysis is better suited for the summary judgment stage of these proceedings."); *MWH Constructors, Inc. v. Brown & Brown Elec., Inc.*, 2018 WL 2087687, at *1 (S.D. Fla. May 4, 2018) (finding section 725.06 inapplicable to the contract at issue following bench trial); *Great Divide Ins. Co. v. Amerisure Ins. Co.*, 2018 WL 1318340, at *5–6 (S.D. Fla. Mar. 14, 2018) (deciding at summary judgment whether an indemnification clause violated section 725.06); *Blok Builders, LLC v. Katryniok*, 245 So. 3d 779, 782-83 (Fla. 4th DCA 2018) (addressing trial court's decision at summary judgment concerning the applicability of section 725.06 to a contract).  In sum, the undersigned finds that Steel Fab has failed to establish that the crossclaim should be dismissed because the indemnification agreement is void for a violation of section 725.06.  The crossclaim alleges that the indemnification agreement was part of a final settlement in resolution of already-incurred costs relating to TJKV's acceleration efforts on the Project, and those allegations concerning the nature of the agreement at issue are sufficient for the crossclaim to proceed at this stage of the case, regardless of the fact that it lacks a monetary limitation on indemnification.

As to Kiewit's final argument, it appears likely that, if section 725.06 applies to the indemnification agreement at all, subsection (2) of that section applies.  What is not clear, though, is whether subsections (1) and (2) are mutually exclusive, and Kiewit has cited no authority for the proposition it seems to argue: that if a construction contract governed by section 725.06 involves a project for a public agency as set forth in subsection (2), then the monetary limitation on indemnification requirement of subsection (1) does *not* apply to that public agency contract.  And, as already stated, Steel Fab has failed to brief this issue.  Regardless, the Court need not reach

- 13 -

this issue if it adopts the undersigned's recommendation to deny the Motion based upon Kiewit's first argument in opposition to the Motion.

**III.**   <u>**Conclusion**</u>

Accordingly, upon due consideration, it is respectfully recommended that the Motion (Doc. 21) be **DENIED**.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 3, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy